UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Mary D. Branch,

                          Plaintiff,           Civ. No. 11-2155 (RHK/JJG)

v.                                        **MEMORANDUM OPINION
AND ORDER**

Officer Timothy Gorman, *et al.*,

                          Defendants.

---

A.L. Brown, Law Offices of A.L. Brown, Maplewood, Minnesota, Joshua R. Williams, Law Office of Joshua R. Williams, PLLC, Minneapolis, Minnesota, for Plaintiff.

Timothy S. Skarda, Minneapolis City Attorney's Office, Minneapolis, Minnesota, for Defendants.

---

## INTRODUCTION

This case arises out of Plaintiff Mary Branch's September 3, 2007, arrest by Minneapolis police officers for violating Minnesota's "open-container" law, Minnesota Statutes § 169A.35. Branch alleges that the officers – Defendants Timothy Gorman and Christopher Garbisch (collectively, "Defendants")[1] – lacked probable cause to arrest her and, hence, violated her Fourth-Amendment (and state-law) rights. She now moves for partial summary judgment on Defendants' liability. For the reasons that follow, her Motion will be denied.

---

[1] Branch purports to assert additional claims against the City of Minneapolis, although such claims (which are not spelled out with clarity in the Complaint) are not currently at issue. Accordingly, for ease of reference, the term "Defendants" herein refers only to Gorman and Garbisch.

## BACKGROUND

At the outset, the Court notes that the evidence proffered by the parties in connection with the instant Motion is extremely meager. There are no deposition transcripts in the record, and the Affidavits submitted by the parties do not address the underlying facts, but instead simply lay the foundation for a smattering of documents. Accordingly, the Court is somewhat hamstrung in recounting the facts; to the extent the Court was able to accurately discern them, they are recited below in the light most favorable to Defendants, the non-moving parties. See, e.g., Rau v. Roberts, 640 F.3d 324, 327 (8th Cir. 2011).

On September 3, 2007, at approximately 1:00 a.m., Branch was a passenger in a car being driven by her husband, David Johnson, in Minneapolis. (Compl. ¶ 6.) Garbisch, who was then on patrol, observed the vehicle and checked its license plate, discovering that the registered owner (Johnson) had an outstanding warrant. (Skarda Aff. Ex. 1 at 2.) Garbisch pulled the vehicle over as other officers, including Gorman, arrived to assist. (Id.; Compl. ¶ 8.) After the officers confirmed Johnson's identity, he was arrested on the outstanding warrant and placed in the back of Garbisch's squad car. (Skarda Aff. Ex. 1 at 2; Compl. ¶ 10.)

The officers then proceeded to search the vehicle, which revealed a metal flask beneath the passenger seat where Branch was sitting. (Skarda Aff. Ex. 1 at 2; Branch Aff. Ex. A at 2.) Garbisch opened the flask and smelled a strong odor of alcohol. (Branch Aff. Ex. A at 2.) He also smelled alcohol coming from Branch. (Id. at 4; Skarda Aff. Ex. 1 at 2.) As a result, he arrested her for violating Minnesota's open-container

law, which makes it unlawful "for a person to have in possession, while in a private motor vehicle . . . any bottle or receptacle containing an alcoholic beverage . . . that has been opened." Minn. Stat. § 169A.35, subd. 3. (Id.)[2] She was transported to the Hennepin County jail and later released. (Compl. ¶¶ 31-32.)

On September 11, 2007, Branch filed a Charge of Discrimination with the Minneapolis Department of Civil Rights, asserting that there existed no basis for her arrest because, on the night in question, the flask was (i) not in her possession and (ii) empty. She contended instead that she had been arrested solely on account of her race. The police department responded to the Charge on October 16, 2007, and, in that response, acknowledged that "[t]he flask appeared to contain no liquid, but had a strong odor of alcohol" on the night of Branch's arrest.

Seizing upon this "admission" that the flask was empty, Branch commenced the instant action on July 29, 2011, asserting *inter alia* that Defendants violated her Fourth-Amendment rights by arresting her for an open-container violation. She now moves for partial summary judgment as to Defendants' liability. The Motion has been fully briefed, and the Court held a hearing on December 12, 2011. The Motion is now ripe for disposition.

---

[2] Pointing to Garbisch's police report, Branch asserts that she was arrested *before* Johnson's car was searched. (Reply at 3-4.) The report notes that Branch was being "uncooperative" during the traffic stop and "*[a]t that point* [she] was handcuffed and placed into" Garbisch's car (Skarda Aff. Ex. 1 at 2 (emphasis added)); only thereafter does the report indicate that the car was searched, and hence it could be read to support Branch's assertion. Yet, the Complaint indicates that the car was searched *before* Branch was arrested (Compl. ¶¶ 17-26), and other documents in the record are consistent with that assertion (see Branch Aff. Ex. A at 2 (noting that Branch "was still in her vehicle in the passenger seat when Officer Garbisch found the flask under [her] seat")). For purposes of the instant Motion, therefore, the Court must assume that the search occurred before Branch's arrest.

- 3 -

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Id. at 322; Whisenhunt v. Sw. Bell Tel., 573 F.3d 565, 568 (8th Cir. 2009). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Weitz Co., LLC v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009); Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078-79 (8th Cir. 2008).

## ANALYSIS

The Court first notes the unusual procedural posture in which this case presents itself. Typically, motions for summary judgment in civil-rights cases are filed with a full evidentiary record, after discovery has been completed. By contrast, this case is in its infancy – it was filed just over four months ago, the discovery period extends for nearly nine additional months, and dispositive motions are not required to be filed until October 1, 2012. Furthermore, summary-judgment motions in civil-rights cases generally are brought by *defendants* asserting that they are entitled to qualified immunity. Yet in this

case, it is Branch – the *plaintiff* – who seeks summary judgment, and the qualified-immunity issue has been raised only in response to her Motion. This unusual posture has left the Court somewhat unclear whether Defendants bear the burden of establishing that they are entitled to qualified immunity at this juncture or, rather, whether Branch bears the burden of demonstrating that they are not. Ultimately, this question is irrelevant because, based on the record currently before the Court, genuine issues of material fact preclude summary judgment for either Branch or Defendants.[3]

"It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005) (quoting Hannah v. City of Overland, Mo., 795 F.2d 1385, 1389 (8th Cir. 1986)). Yet, qualified immunity shields police officers who make mistakes when effecting arrests, as long as those mistakes are reasonable. Id. As a result, "the governing standard for a Fourth Amendment unlawful arrest claim 'is not probable cause in fact but arguable probable cause . . . that is, whether the officer should have known that the arrest violated plaintiff's clearly established right[s].'" Id. (quoting Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir. 1996)); accord, e.g., Keil v. Triveline, 661 F.3d 981, 985 (8th Cir. 2011) ("Officers may also be entitled to qualified immunity if they arrest a suspect under the mistaken belief that they

---

[3] Defendants contend that "[n]ot only should [Branch's] motion be denied, [but] summary judgment [also] should be entered in [their] favor." (Mem. in Opp'n at 4.) The Court declines this invitation to grant summary judgment for Defendants *sua sponte*. Indeed, it would have been a simple matter for them to cross-move for summary judgment on qualified-immunity grounds and more fully flesh out that issue, rather than asking the Court to opine on a limited evidentiary record. In any event, as set forth below, Defendants are not entitled to summary judgment at this stage because material facts are in dispute.

have probable cause to do so, provided that the mistake is objectively reasonable.") (citation omitted). To determine whether there existed "arguable probable cause" for an arrest, the question is whether "a reasonable officer could have believed [the arrest] to be lawful, in light of . . . the information the [arresting] officer[] possessed." Sang v. City of St. Paul, Civ. No. 09-455, 2010 WL 2346600, at *3 (D. Minn. June 8, 2010) (Kyle, J.) (citing Anderson v. Creighton, 483 U.S. 635, 641 (1987)).

Here, Branch argues that at the time of her arrest, Defendants lacked sufficient information to believe that she had violated the open-container law. In particular, she contends that the record clearly shows that Defendants possessed no information establishing (1) she possessed the flask or (2) the flask contained any liquid. (Pl. Mem. at 3-9.) The Court cannot agree.

Possession. Branch first argues that she was simply a bystander with access to the flask and, "by merely being present," no reasonable officer could have concluded that she possessed it, constructively or otherwise. (Pl. Mem. at 8; accord, e.g., Reply at 8 (arguing that sitting in the seat under which the flask was found was "not enough for a reasonable police officer to believe that she possessed dominion and control over the flask").) But the record establishes more than Branch's mere presence in the passenger seat. Rather, there exists evidence that Garbisch also *smelled alcohol on her*. Hence, the facts here are distinguishable from the cases cited by Branch – State v. Florine, 226 N.W.2d 609 (Minn. 1975) (*per curiam*), and State v. Albino, 384 N.W.2d 525 (Minn. Ct. App. 1986) – which stand for the unremarkable proposition that presence in a vehicle is an insufficient basis to link an occupant to contraband found therein. Here, by contrast,

the odor of alcohol emanating from Branch established a "strong probability" that she had drunk from the flask and, accordingly, "was at the time consciously exercising dominion and control over" it.  Florine, 226 N.W.2d at 611.  This is simply "not a case in which the [officers] could not prove, even by inference, that [Branch] was anything more than present in the vehicle or physically proximate to" the flask, because the smell of alcohol from her was sufficient to show "a connection between [her] and the" flask.  United States v. Johnson, 18 F.3d 641, 648 (8th Cir. 1994) (Kyle, J., sitting by designation).[4]

Alcohol in the flask.  Quoting the response to her Charge of Discrimination, Branch next argues that "there is no genuine dispute that at the time of arrest '[t]he flask appeared to contain no liquid.'"  (Reply at 5 (emphasis deleted).)  She points out that it "is not a crime for a passenger (or driver) of a vehicle to possess[] a bottle that merely smells like alcohol; it is only a crime if the bottle or receptacle *contains* an alcoholic beverage."  (Id. at 4-5 (emphasis in original) (internal quotation marks and alteration deleted).)  Based on the so-called "admission" that the flask was empty, Branch contends that a reasonable officer would not have believed he had probable cause to arrest her for violating the open-container law.[5]

---

[4] Citing State v. Collard, 414 N.W.2d 733 (Minn. Ct. App. 1987), Branch argues that "smelling like alcohol . . . add[s] nothing to support a probable cause finding."  (Reply at 3.)  But the Court has carefully reviewed Collard, and that case nowhere held, or even intimated, that the smell of alcohol emanating from an individual is irrelevant to the issue of possession.

[5] The parties dispute whether the response to the Charge of Discrimination properly may be considered an "admission" by Defendants.  Notably, the Charge was leveled against the Minneapolis Police Department and not the officers named as Defendants here, and the response was submitted by an Assistant Minneapolis City Attorney, casting doubt upon whether it was an

If the only evidence in the record were the response to the Charge of Discrimination, Branch's argument might gain traction. Indeed, if the flask had been empty when she was arrested and Defendants had been aware of that fact, no "reasonable officer could . . . have believed [the arrest] to be lawful," Sang, 2010 WL 2346600, at *3, because a violation of the open-container law requires that the container actually *contain* alcohol. Minn. Stat. § 169A.35, subd. 3.

Yet, the response to the Charge of Discrimination is only part of the story. Branch simply ignores that Defendants also have proffered a police report Garbisch filed shortly after her arrest. (Skarda Aff. Ex. 1.) Appended to that report is a "property inventory" form listing items seized during the arrest, which contains an entry providing "leather wrapped metal flask cntg" – presumably meaning "containing" – "suspected alcohol." (Id. at 3.) Hence, the report suggests that Defendants did in fact know, at the time of the arrest, that the flask contained some amount of alcohol. When questioned about the report at oral argument, Branch asserted that the "admission" in the response to the Charge of Discrimination must control because the response was filed *after* the police report. She cited no authority for this contention, however, which in any event runs counter to the principle that the Court must view the evidence in the light most favorable to Defendants at this stage.

At bottom, there is evidence in the record suggesting that Defendants were in fact aware that the flask contained alcohol, as well as evidence suggesting that Defendants

---

"admission" *by the Defendants* under Federal Rule of Evidence 801(d). Regardless, the Court need not wade into this dispute because summary judgment is improper even assuming *arguendo* that the response was in fact an "admission."

thought the flask was empty. If the former were proven true, the officers would be entitled to qualified immunity because they undoubtedly would have had probable cause to arrest; but if the latter were proven true, the officers would not be entitled to qualified immunity. Since the record contains conflicting evidence on this issue, the Court cannot determine as a matter of law that there existed (or did not exist) arguable probable cause to arrest. Accordingly, summary judgment is improper. See, e.g., Kukla v. Hulm, 310 F.3d 1046, 1049 (8th Cir. 2002) ("[I]f the arrestee challenges the officer's description of the facts and presents a factual account that would not permit a reasonable officer to make an arrest, then there is a material factual dispute precluding summary judgment."); Weiner v. Lappegard, Civ. No. 04-630, 2005 WL 1155943, at *4 (D. Minn. May 16, 2005) (Kyle, J.) ("[I]f there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary judgment.").[6]

Lastly, the Court pauses to address Defendants' assertion, in the final line of their brief, that "[a]t the very least, Defendant Gorman should be dismissed because there is no evidence that he detained or arrested" Branch. (Mem. in Opp'n at 10.) As this Court has previously noted, each Defendant's conduct must be assessed individually when determining whether qualified immunity exists. McClennon v. Kipke, __ F. Supp. 2d __, 2011 WL 5177393, at *8 n.9 (D. Minn. Oct. 31, 2011) (Kyle, J.) (citing Heartland Acad. Cmty. Church v. Waddle, 595 F.3d 798, 805-06 (8th Cir. 2010)). Here, while it is

---

[6] The Minneapolis Department of Civil Rights' finding that "[t]he flask was empty" on the night in question does not alter the Court's analysis. Notably, in a footnote immediately following that "finding," the Department stated that the flask "contained 10 cc of liquid." (Williams 11/28/11 Decl. Ex. C at 3 n.6.) In other words, the Department's findings are internally inconsistent and, hence, can be read to support both Branch and Defendants.

- 9 -

undisputed that Garbisch arrested Branch, the evidence before the Court does not appear to suggest that Gorman had any involvement therewith. Gorman, therefore, may well be entitled to qualified immunity. Yet, Defendants have not cross-moved for summary judgment, and hence Branch has not addressed this argument. Accordingly, the Court declines to dismiss Gorman on this basis at the present time.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Branch's Motion for Partial Summary Judgment of Liability (Doc. No. 8) is **DENIED**.

Date:  December 21, 2011                               s/Richard H. Kyle
                                                      RICHARD H. KYLE
                                                      United States District Judge