# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Mary D. Branch,

                Plaintiff,        Civ. No. 11-2155 (RHK/JJG)

v.                                **MEMORANDUM OPINION AND ORDER**

Officer Timothy Gorman, *et al.*,

                Defendants.

---

A.L. Brown, Capitol City Law Group, LLC, St. Paul, Minnesota, Joshua R. Williams, Law Office of Joshua R. Williams, PLLC, Minneapolis, Minnesota, for Plaintiff.

Timothy S. Skarda, Minneapolis City Attorney's Office, Minneapolis, Minnesota, for Defendants.

---

## INTRODUCTION

This case arises out of Plaintiff Mary Branch's arrest by Minneapolis police officers on September 3, 2007, for violating Minnesota's "open-container" law. Branch alleges that the officers – Defendants Timothy Gorman and Christopher Garbisch – lacked probable cause to arrest her and, hence, violated her Fourth Amendment (and state-law) rights; she also asserts related claims against the City of Minneapolis (the "City"). Defendants now move for summary judgment on all of Branch's claims, and Branch cross-moves for partial summary judgment as to liability. For the reasons that follow, Defendants' Motion will be granted in part and Branch's Motion will be denied.

## BACKGROUND

On September 3, 2007, at approximately 12:30 a.m., Branch was a passenger in a car driven by her husband, David Johnson, in Minneapolis. (Branch Dep. at 16-19.) Garbisch, who was patrolling in the area, checked the vehicle's license plate and discovered that Johnson had an outstanding warrant. (Garbisch Dep. at 25; Skarda Aff. (Doc. No. 16) Ex. 1 at 2.) He pulled the vehicle over as other officers (including Gorman) arrived to assist. (Garbisch Dep. at 15; Dashcam Video.)[1] After confirming Johnson's identity, Garbisch arrested him on the outstanding warrant and placed him in the back of his squad car. (Garbisch Dep. at 27; Branch Dep. at 20-22; Dashcam Video.)

It is not entirely clear what happened next. The Dashcam Video shows that two officers approached the car, one on either side. According to Branch, the officer on the driver's side was Gorman, who allegedly told her through the rolled-down window, "Nigger, your black ass is going to jail." (Branch Dep. at 21; Branch Decl. (Doc. No. 53) ¶ 2.) On the Dashcam Video, however, it does not appear the driver-side officer was speaking to Branch.[2] Nor does the video reveal that officers took any action to place her under arrest at that time.

In any event, a few seconds later Branch opened her door; on the Dashcam Video, the officer on the passenger side of the vehicle then appears to give her some instructions.

---

[1] In his deposition, Garbisch was questioned about a video of the incident captured by his squad car's dashboard camera. (See Garbisch Dep. at 24-54.) At the Court's request, the City has submitted a copy of that video, which is attached to this Order. When questioned at oral argument, neither party objected to the Court's consideration of the video.

[2] While Gorman's deposition transcript has not been proffered, it is clear that he denies this statement. (See Branch Decl. (Doc. No. 13) Ex. A at 3; see also Answer ¶ 14.)

Branch claims this officer was Gorman and that he told her to exit the vehicle. (Branch Dep. at 22.) But she also testified that Gorman was on the *driver's* side of the car, and it is clear from the Dashcam Video that a different officer was speaking to her from the passenger side. Regardless, "thinking [she] was going to be released and go home," Branch exited the car, closed the door, walked around the vehicle, and got into the driver's seat. (Branch Dep. at 22; Dashcam Video.) Several officers then approached and removed her from the car, sitting her down on the curb. (Branch Dep. at 22; Dashcam Video.)

At about the time Branch was removed from the car, an unknown officer opened the passenger-side door and retrieved a small metal flask from inside the vehicle. (Dashcam Video; Garbisch Dep. at 35.) The record is unclear (1) which officer first spotted the flask and (2) precisely where it was located. (See Garbisch Dep. at 37-38.) Yet, it is undisputed that the flask was either completely under the passenger seat where Branch had been sitting (id. at 17, 21, 37-38; Branch Decl. (Doc. No. 13) Ex. A at 3; Skarda Aff. (Doc. No. 16) Ex. 1), partially under that seat with its end exposed (Garbisch Dep. at 40-41), or on the floor in front of the passenger seat, near where Branch's feet had been located (id. at 48-49). Branch denies knowing that the flask was in the car or drinking on the night in question. (Branch Dep. at 32.)[3] She did, however, ask the officers "three [or] four" times if she could use the bathroom while sitting on the curb; they refused. (Id. at 28-29.)

---

[3] Garbisch testified in his deposition that he did not ask Branch whether she had been drinking and could not recall any officer asking if the flask was hers. (Garbisch Dep. at 22.)

The record also is unclear what happened once the flask was removed from the car. According to Branch, the officers opened the flask, shook it, and proclaimed it empty. (Id. at 30-31.) Garbisch testified that he opened the flask's cap but could not see through its narrow opening. (Garbisch Dep. at 22.) He detected a strong odor of alcohol, however, suggesting to him that at least some amount of alcohol was in the flask. (Id. at 22-23.) The Dashcam Video does not show any of this, although at times the flask is out of view or blocked from the camera.

Ultimately, Garbisch arrested Branch for violating Minnesota's open-container law, Minn. Stat. § 169A.35, subd. 3, making it unlawful "for a person to have in possession, while in a private motor vehicle . . . any bottle or receptacle containing an alcoholic beverage . . . that has been opened." (Id. at 47.) She was transported to the Hennepin County jail, booked, and released; the charge against her was later dropped. (Doc. No. 16, Ex. 3.)

On September 11, 2007, Branch filed a Charge of Discrimination with the Minneapolis Department of Civil Rights, asserting that there existed no basis for her arrest because the flask was (i) not in her possession and (ii) empty on the night in question. She contended instead that she had been arrested on account of her race. In its October 16, 2007 response to the Charge, the police department denied any civil-rights violation. It asserted that there was a valid basis for Branch's arrest because although "[t]he flask appeared to contain no liquid," it "had a strong odor of alcohol." (Doc. No. 13, Ex. A.) The Department of Civil Rights dismissed the Charge on December 22, 2010. (Doc. No. 18, Ex. C.)

Branch commenced the instant action on July 29, 2011, against Garbisch and Gorman, in their individual and official capacities, and the City. Her Complaint asserts four claims: (1) unreasonable seizure under the Fourth Amendment to the United States Constitution (Count I); (2) false arrest and false imprisonment under Minnesota law (Count II); (3) civil conspiracy to deprive her of her civil rights (Count III); and (4) violation of the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.01 *et seq.*, by discriminating against her "based on her race and disability in the area of public services" (Count IV). The Complaint does not clearly specify which Defendants are implicated in which Counts.

On October 17, 2011, Branch moved for partial summary judgment as to liability on Counts I and II, arguing that "the undisputed facts demonstrate that Gorman and Garbisch violated her Fourth Amendment rights and falsely imprisoned her by arresting her absent probable cause." (Doc. No. 12 at 1.) The Court denied the Motion, noting that it was unclear what the officers knew at the time Branch was arrested. See Branch v. Gorman, Civ. No. 11-2155, 2011 WL 6740286, at *3 (D. Minn. Dec. 21, 2011).

With discovery now complete, Branch has renewed her Motion for summary judgment as to Defendants' liability. Defendants, in turn, have cross-moved for summary judgment on all of Branch's claims. In response to that Motion, Branch has conceded the dismissal of her "Monell claim,[4] official capacity claims, the civil conspiracy claims, and the [MHRA] claims based on disability." (Pl. Mem. in Opp'n at 2 n.1.) She has also

---

[4] Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658 (1978). Despite Branch's "concession," no Monell claim was pleaded in the Complaint.

- 5 -

conceded dismissal of her race-based MHRA claim (Count IV) to the extent it is asserted against Garbisch, and Counts I and II insofar as they are asserted against Gorman. (Id.) What appear to remain for resolution, therefore, are the following claims: Count I (Fourth Amendment) and Count II (false arrest/imprisonment) against Garbisch in his individual capacity; and Count IV (race-based MHRA violation) against Gorman. At this juncture, Branch does not press any claims against the City.[5]

The parties' Motions have been fully briefed, and the Court held a hearing on the Motions on September 19, 2012. They are now ripe for disposition.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Id. at 322; Whisenhunt v. Sw. Bell Tel., 573 F.3d 565, 568 (8th Cir. 2009). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Weitz Co., LLC v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009); Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. Anderson v. Liberty

---

[5] Although this was not entirely clear from Branch's submissions, her counsel confirmed at oral argument that she no longer seeks relief from the City.

- 6 -

Lobby, Inc., 477 U.S. 242, 256 (1986); Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078-79 (8th Cir. 2008).

Where, as here, the Court confronts cross-motions for summary judgment, this approach is only slightly modified. When considering Branch's Motion, the Court views the record in the light most favorable to Defendants, and when considering Defendants' Motion, the Court views the record in the light most favorable to Branch. "Either way, summary judgment is proper if the record demonstrates that there is no genuine issue as to any material fact." Seaworth v. Messerli, Civ. No. 09-3437, 2010 WL 3613821, at *3 (D. Minn. Sept. 7, 2010) (Kyle, J.), aff'd, No. 10-3532, 2011 WL 873121 (8th Cir. Mar. 15, 2011).

## ANALYSIS

The Court's analysis begins (and ends) with the lone federal claim remaining in this case: Garbisch's alleged violation of Branch's Fourth Amendment rights when he arrested her without probable cause. Garbisch argues that he is entitled to qualified immunity on this claim. For the reasons that follow, the Court agrees.

**I.      General principles**

Qualified immunity insulates government officials from suit when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citation omitted). In analyzing whether an official is entitled to qualified immunity, the Court must answer two questions: Do the facts show that the challenged conduct violated a constitutional right? And if a violation could be established on those facts, was the

right clearly established on the date in question? E.g., Avalos v. City of Glenwood, 382 F.3d 792, 798 (8th Cir. 2004) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). The Court is "permitted to exercise [its] sound discretion in deciding which of the[se] two [questions] should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236.

Qualified immunity is a powerful defense for police officers because it insulates them from mistaken judgments, as long as those mistakes were objectively reasonable. E.g., Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005). Officers "are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Luckert v. Dodge Cnty., 684 F.3d 808, 817 (8th Cir. 2012) (citation omitted). Were it otherwise, government officials would be impeded in performing their duties because they would tend to "always err on the side of caution." Habiger v. City of Fargo, 80 F.3d 289, 295-96 (8th Cir. 1996) (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991) (*per curiam*)). Hence, "all but the plainly incompetent or those who knowingly violate the law" are protected by qualified immunity. Luckert, 684 F.3d at 817.

## II. Qualified immunity applied

The constitutional right at issue here is the Fourth Amendment's prohibition on unreasonable seizures. "It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth . . . Amendment[]." Walker, 414 F.3d at 992 (citation omitted). In opposing Defendants' Motion, and in seeking summary judgment herself, Branch argues that Garbisch violated this right when he arrested her for an open-container violation without probable cause. In particular, she

contends that Garbisch had no basis to conclude that she possessed the flask or that it contained any alcohol, two essential elements of the crime. (See Pl. Mem. at 3-5; Pl. Mem. in Opp'n at 2.)

But because qualified immunity allows for reasonable mistakes, "the governing standard for a Fourth Amendment unlawful arrest claim 'is not probable cause in fact but *arguable* probable cause . . . that is, whether the officer should have known that the arrest violated plaintiff's clearly established right[s].'" Walker, 414 F.3d at 992 (emphasis added) (citation omitted); accord, e.g., Keil v. Triveline, 661 F.3d 981, 985 (8th Cir. 2011). Arguable probable cause exists when "a reasonable officer could have believed [the arrest] to be lawful, in light of . . . the information [he] possessed." Sang v. City of St. Paul, Civ. No. 09-455, 2010 WL 2346600, at *3 (D. Minn. June 8, 2010) (Kyle, J.) (citing Anderson v. Creighton, 483 U.S. 635, 641 (1987)); accord, e.g., Smithson v. Aldrich, 235 F.3d 1058, 1064 (8th Cir. 2000). On the record before it, the Court concludes that Garbisch had at least arguable probable cause to arrest Branch for an open-container violation, as the facts known by him were sufficient to permit a reasonable officer to conclude that she possessed a flask containing alcohol.[6]

---

[6] The Court notes that "[a]rguable probable cause *does not require an arresting officer to prove every element of a crim*e or to obtain a confession before making an arrest," as this would "negate the concept of probable cause and transform arresting officers into prosecutors." Scarbrough v. Myles, 245 F.3d 1299, 1302-03 (11th Cir. 2001) (*per curiam*) (emphasis added). Hence, it was unnecessary for Garbisch to have sufficient evidence to prove each element of an open-container violation in order to arrest Branch. Nevertheless, the Court finds sufficient evidence in the record for a reasonable police officer to have concluded that the elements of the crime charged – possession and alcohol in the flask – were met.

### A. Possession

At the time of Branch's arrest, Garbisch knew that she had been sitting in the passenger seat of Johnson's car in the immediate vicinity of the area where the flask was located. Notably, the flask was not stored in the glove compartment or tucked away in the rear passenger area or trunk; it was within Branch's reach and easily accessible to her, although it is unclear whether it was partially (or completely) hidden from view. Numerous Minnesota cases have held that such facts are sufficient to demonstrate constructive possession of contraband. See, e.g., State v. Olson, 326 N.W.2d 661, 663 (Minn. 1982) (evidence supported conviction of car driver for unlawful possession of firearm where search uncovered gun wedged between driver's seat and backrest); State v. Rockett, No. A07-2318, 2009 WL 910698, at *3 (Minn. Ct. App. Apr. 7, 2009) (no error in concluding rear-seat passenger with access to trunk via passway through back seat constructively possessed gun found in trunk); State v. Wilson, No. C9-99-1306, 2000 WL 719493, at *1 (Minn. Ct. App. June 6, 2000) (jury could reasonably infer defendant possessed gun in light of police officer's testimony that he observed defendant "sitting directly on the gun as [he] shifted in his seat to reach for his driver's license"). Indeed, cases repeatedly note that "[p]roximity is important when evaluating constructive possession." Rockett, 2009 WL 910698, at *3; accord, e.g., State v. Cusick, 387 N.W.2d 179, 181 (Minn. 1986); Reese v. State, No. C7-98-788, 1998 WL 846530, at *3 (Minn. Ct. App. Dec. 8, 1998) ("Courts have found possession when drugs or firearms were found 'in close proximity' to the defendant.") (citations omitted); see also Maryland v.

Pringle, 540 U.S. 366, 374 (2003) (finding probable cause that front-seat passenger possessed cocaine found hidden behind *back-seat* armrest).

To be sure, "[t]he line between knowing possession and guilt by association can be very thin," United States v. Phillips, 496 F.2d 1395, 1397 (5th Cir. 1978), and hence courts have recognized that "mere proximity" to contraband, without more, is insufficient to establish possession. E.g., United States v. Timlick, 481 F.3d 1080, 1083 (8th Cir. 2007); United States v. Bradley, 473 F.3d 866, 867 (8th Cir. 2007). Indeed, Branch relies upon two Minnesota cases standing for this proposition: State v. Florine, 226 N.W.2d 609 (Minn. 1975) (*per curiam*), and State v. Porter, 674 N.W.2d 424 (Minn. Ct. App. 2004). (See Pl. Mem. at 3-4.)

But unlike the instant action, Florine, Porter, and the other cases cited above were *criminal* cases in which the government was required to prove guilt *beyond a reasonable doubt*. Here, by contrast, the governing legal standard is far lower – Garbisch was required only to have *arguable probable cause*, that is, an objectively reasonable basis to conclude (among other things) that Branch possessed the flask. This Court cannot say that a police officer acts unreasonably in concluding that a passenger constructively possesses contraband found in her immediate vicinity in a vehicle. See, e.g., Jack v. Hansell, No. 6:08-cv-2069, 2010 WL 3517040, at *7 (M.D. Fla. Sept. 7, 2010) (officers had arguable probable cause to arrest plaintiff for possessing drugs found between right rear passenger seat and vehicle side panel when plaintiff was lone occupant of back seat); King v. Newell, No. 7:06-CV-57, 2007 WL 2705553, at *3 (M.D. Ga. Aug. 15, 2007) (Report & Recommendation of Hodge, M.J.) (arguable probable cause existed because

- 11 -

drugs were in "close proximity to plaintiff" in vehicle), adopted in relevant part, 2007 WL 2705547 (M.D. Ga. Sept. 12, 2007).

In any event, as the Court previously noted when denying Branch's first summary-judgment Motion, there is more in the record here than Branch's "mere proximity" to the flask. She nowhere disputes that she repeatedly asked the officers to use the bathroom, indicating that she had been drinking *something* before the car was stopped, and the flask itself was either empty or contained (at most) a small amount of alcohol. Garbisch stopped the car in darkness after midnight, a far more likely time for an individual to consume alcohol in a vehicle (*i.e.*, out of sight) than in broad daylight. Other officers testified that Branch was acting belligerently toward them, which is a sign of possible intoxication.[7] Considering the totality of the circumstances, the Court cannot say that Garbisch acted unreasonably in concluding that Branch was more than merely "present in the vehicle [and] physically proximate to" the flask. Branch, 2011 WL 6740286, at *3.[8]

---

[7] Branch asserts that Garbisch was unaware of her belligerence, as he testified in his deposition that he could not hear the exchange between her and the other officers. (Pl. Reply at 3-4.) To be sure, only facts known at the time of arrest are considered when evaluating probable cause. See, e.g., Baribeau v. City of Minneapolis, 596 F.3d 465, 474 (8th Cir. 2010) (*per curiam*). But the fact that Garbisch could not *hear* Branch does not mean he was *unaware* she was being uncooperative. Indeed, he testified that he inferred from Branch's and the officers' "body language" that "there obviously had to be something, some sort of disagreement or something" between them. (Garbisch Dep. at 51-52.) The Dashcam Video, too, shows at least one officer speaking to Branch in an animated fashion. And perhaps most notably, Branch has nowhere disputed acting belligerently toward the officers, despite having the opportunity to do so in several Declarations she has filed in this case.

[8] In denying Branch's initial summary-judgment Motion, the Court noted that certain documents in the record suggest Garbisch detected an odor of alcohol on Branch before placing her under arrest. In his deposition, however, Garbisch testified that he did not smell alcohol until *after* the arrest. (Garbisch Dep. at 57.) Yet, the odor of alcohol is only one possible way to link the flask to Branch; for the reasons just stated, other evidence in the record establishes that link.

### B. Alcohol in the flask

Next, a reasonable police officer on the scene could have concluded there was alcohol in the flask. Branch apparently believes there must have been alcohol in the flask *at the time of arrest* in order for probable cause to exist under the open-container law. Since the officers purportedly "knew" the flask was empty, she claims they necessarily lacked probable cause to arrest her. This argument, however, misapprehends the law.[9]

As long as an officer has an objectively reasonable basis to conclude that an opened flask, bottle, or similar object contained alcohol *at some point* while in a moving vehicle, probable cause would exist to arrest the person possessing it. An example makes this clear. Assume that a police officer pulled over a vehicle in which he found six empty beer cans at the driver's feet, all of which felt cold to the touch. Assume further that the driver had been weaving erratically, had slurred speech and watery eyes, manifested other symptoms of intoxication, and smelled of beer, even though the officer did not actually observe the driver consuming alcohol. In the Court's view, despite the cans being empty, the officer could reasonably conclude that they had contained alcohol – which had been consumed by the driver – at some point while the vehicle was being driven.

This conclusion is not novel. Courts routinely find probable cause under open-container laws when police officers observe empty bottles in vehicles. One such case, Guidry v. Boyd, No. 06 C 1600, 2007 WL 2317174 (N.D. Ill. July 17, 2007), is nearly on

---

[9] In fairness, the Court previously echoed the same sentiment. See Branch, 2011 WL 6740286, at *3 ("[I]f the flask had been empty when she was arrested and Defendants had been aware of that fact, no reasonable officer could . . . have believed [the arrest] to be lawful.") (internal quotation marks and citation omitted). Upon further reflection and research, the Court now concludes otherwise.

all-fours with this case. There, upon approaching the plaintiff's vehicle, two police officers observed open beer bottles inside, which the plaintiff claimed were empty. The plaintiff was arrested and charged with violating, *inter alia*, Illinois's open-container law, which is materially indistinct from Minnesota's. The charges were eventually dropped, and the plaintiff brought a Fourth Amendment claim against the officers. <u>Guidry</u>'s grant of summary judgment to the officers is equally apt here:

> [T]he threshold question in this case . . . is whether a reasonable officer would have believed that Plaintiff had transported or possessed alcohol in an open container so as to justify his arrest. The relevant Illinois statute states that no driver or passenger "may transport, carry, possess or have any alcoholic liquor within the passenger area of any motor vehicle upon a highway in this State except in the original container and with the seal unbroken." Though the Illinois courts have not addressed the empty-bottle question frequently, *it is relatively clear that the presence of an empty bottle of beer or liquor in the passenger area of a car is sufficient to create probable cause for arrest under the statute.* . . .
>
> Plaintiff seemingly takes the position that, for purposes of summary judgment, the Court should assume that the open beer bottles in the passenger compartment were empty. The Court will do so, but it makes no difference. Even assuming that a bottle was empty on the floor of the front passenger compartment, its presence was sufficient to create probable cause to arrest Plaintiff for violating the Illinois statute prohibiting "transportation or possession of alcoholic liquor in a motor vehicle . . . except in the original container and with the seal unbroken." *The presence of an open empty alcohol container in the passenger area of a car would make a reasonable police officer believe that a suspect had been transporting alcohol in an open container.*

<u>Id.</u> at *9-10 (emphases added) (citation omitted). Other decisions are in accord. <u>See, e.g.</u>, <u>Thomas v. City of N.Y.</u>, No. 05 Civ. 6449, 2008 WL 3456173, at *3-4 (S.D.N.Y. Aug. 12, 2008) ("[T]he factual dispute as to whether the container was empty is immaterial in light of the [fact] that possession of an empty container may give rise to

probable cause for an arrest."); People v. Montanez, No. C053012, 2007 WL 2045582, at *5 (Cal. Ct. App. July 18, 2007) ("Whether the bottle was empty is irrelevant."); City of Sparta v. Brooks, Nos. 93-1510-FT, 93-1511-FT, 1993 WL 381580, at *1 (Wis. Ct. App. Sept. 30, 1993) (officer's observation of two uncapped beer bottles through car window "provide[d] reasonable grounds for an officer to believe that someone had been drinking alcoholic beverages in the car," even though he could not tell if bottles were empty); People v. Gray, 420 N.E.2d 856, 859 (Ill. Ct. App. 1981).

Hence, even under Branch's version of events, Garbisch had at least arguable probable cause to arrest her. Assuming the flask was empty and assuming further Garbisch knew that to be the case, a reasonable officer nevertheless could have concluded that Branch "had just finished consuming" its contents, given the evidence recounted above linking her to it (proximity, etc.). People v. Bothwell, 690 N.Y.S.2d 231, 234-35 (N.Y. App. Div. 1999); accord, e.g., United States v. Grote, 629 F. Supp. 2d 1201, 1205 (E.D. Wash. 2009) ("An opened bottle, in particular, is arguably evidence of recent alcohol consumption.").

For all of these reasons, the Court determines that Garbisch had at least arguable probable cause to arrest Branch for an open-container violation. Accordingly, he is entitled to qualified immunity on her Fourth Amendment claim (Count I), and that claim will be dismissed.

## III. The remaining claims

Count I is the lone federal claim still standing in this case. The remaining claims – Count II (false arrest/imprisonment against Garbisch) and Count IV (race-based MHRA

violation against Gorman) – are state-law claims before the Court under the supplemental jurisdiction statute, 28 U.S.C. § 1367.  Yet, where all federal claims are dismissed prior to trial, the balance of factors to be considered in deciding whether to exercise supplemental jurisdiction typically militates against exercising such jurisdiction.  E.g., Johnson v. City of Shorewood, 360 F.3d 810, 819 (8th Cir. 2004) (citing Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).  That is the case here.  Accordingly, the Court declines to exercise supplemental jurisdiction over Branch's remaining claims, and they will be dismissed without prejudice.

## CONCLUSION

"The Constitution does not guarantee that only the guilty will be arrested.  If it did, § 1983 would provide a cause of action for every defendant acquitted – indeed, for every suspect released."  Baker v. McCollan, 443 U.S. 137, 145 (1979).  For the reasons stated above, the Court concludes that Garbisch acted reasonably in arresting Branch, even if she was not guilty of the crime for which she was arrested.  Accordingly, she has failed to establish a constitutional violation, and Garbisch is entitled to qualified immunity on her Fourth Amendment claim.

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED**:

1.     Branch's Motion for Partial Summary Judgment on the Issue of Liability (Doc. No. 40) is **DENIED**;

2.     Defendants' Motion for Summary Judgment (Doc. No. 45) is **GRANTED IN PART**, and the following claims are **DISMISSED WITH PREJUDICE**:  (a) Count I

(Fourth Amendment violation), in its entirety; (b) Count II (false arrest/imprisonment), to the extent it is alleged against Gorman; (c) Count III (civil conspiracy), in its entirety; and (d) Count IV (MHRA violation), (i) to the extent it is based on disability discrimination and (ii) insofar as it is alleged against Garbisch; and

    3.    Branch's remaining claims are **DISMISSED WITHOUT PREJUDICE**.[10]

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: September 27, 2012                    s/Richard H. Kyle
                                                           RICHARD H. KYLE
                                                           United States District Judge

---

[10] See 28 U.S.C. § 1367(d).